**In re ADAMSON COMPANY, INC. and Old Dominion Iron And Steel Corporation, t/a Old Dominion Fabricators, Debtors.**

Bankruptcy. Nos. 83–00725–R, 83–00726–R.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

May 17, 1983.

---

W.H. Schwarzschild, III, Richmond, Va., for debtors.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

Adamson Company, Inc. and Old Dominion Iron and Steel Corporation (the debtors) filed petitions under Chapter 11 of Title 11 U.S.C. on May 3, 1983. Immediately upon filing these petitions Adamson and ODIS requested a hearing on an application for authority to borrow money from BVA Credit Corporation (BVA). The request was granted and hearing was held May 4, 1983, at 2:00 p.m. The application proposed that BVA would continue the financing arrangement which pre-existed the filing of the petitions herein pursuant to its revolving loan agreement with the debtors. Through the original loan agreement, BVA had a security interest in much of the personal property of the debtors and a lien on real property owned by the debtors in Ohio. The application alleged that the debtors could not continue business and attempt to reorganize without an extension of credit. The additional funds were allegedly needed

on the day of the filing of the application in order to meet raw material needs and to meet payroll obligations. The debtors in their application noted they had given notice by telephone or attempted to give notice by telephone to each of their ten largest creditors, to their primary secured creditors, and to the United States Trustee.

Jerry Davis, the principal officer of the debtors testified that he had known for some time of the debtors' perilous financial conditions. The debtors attempted to resolve their economic crises through entering into a credit restructuring agreement with their creditors; however, these efforts were to no avail. Davis further testified that he knew approximately two to three weeks before the debtors filed their petitions in bankruptcy that such petitions would be necessary. Davis testified that the debtors need $28,000.00 to meet payroll due on May 4 and $100,000.00 for purchase of raw materials and supplies which would last for approximately one week to ten days, but no evidence was elicited which disclosed whether the payroll of $28,000.00 was a weekly payroll. Currently, the debtors are operating at 40% of capacity and recently they furloughed employees when lack of work demands so dictated. The debtors in their application sought an order under 11 U.S.C. § 364(c)(1) which would permit long term financing by BVA. The debtors through their principal officer testified they were unable to obtain unsecured credit from their normal credit lenders.

At the hearing held in this matter the Court denied the debtors' request and counsel for the debtors asked that the Court approve priority for a lesser amount and a limited period of time. That application also was denied.

## CONCLUSIONS OF LAW

The debtors filed their applications for interim financing pursuant to 11 U.S.C. § 364(c)(1) which provides in pertinent part that

"... the Court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—

(1) with priority over any or all administrative expenses of the kind specified in § 503(b) or 507(b) of this title; ...."

Financing pursuant to 11 U.S.C. § 364(c) should be permitted only when a debtor "... is unable to obtain unsecured credit allowable under § 503(b)(1) of this title as an administrative expense ...." Section 364(c) financing obtains a priority over other administrative expenses.

Courts may authorize the obtaining of credit pursuant to 11 U.S.C. § 364(c) only after creditors have been provided with notice of the application and the court has convened a hearing in the matter. 11 U.S.C. § 102(1)(B) allows Courts in certain circumstances to dispense with the necessity for an actual hearing; however, courts may act without a hearing only if notice has been properly given all parties in interest and no request for a hearing has been made.[1] The Code requires parties in interest and creditors be provided with "... such notice as is appropriate in the particular circumstances ...." 11 U.S.C. § 102(1)(A). Because the interests of other creditors may be prejudiced through the granting of the § 364(c) priority, due process requires that such creditors have meaningful notice and an opportunity for a hearing. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 318, 70 S.Ct. 652, 659, 94 L.Ed. 865 (1950). Appropriate notice in such a case must include providing creditors with an adequate opportunity to object to the granting of a priority. Citing the urgent need to obtain immediate financing, the debtors contend that the oral notice provided the ten largest creditors and the U.S. Trustee less than 24 hours prior to the hearing in this matter is sufficient notice under this section.

---

1. 11 U.S.C. § 102(1)(B) allows courts to waive the requirement of an actual hearing "... if such notice is given properly and if—(i) such a hearing is not requested timely by a party in interest or (ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act ...."

In *In re Sullivan Ford Sales,* 2 B.R. 350 (Bkrtcy.D.Me.1980), except for the time factor in filing the application, the court faced a factual situation almost identical to that faced by this Court in the instant case. In *Sullivan Ford,* approximately two weeks after filing its petition in bankruptcy a Chapter 11 debtor filed applications pursuant to 11 U.S.C. § 364(c) to obtain interim financing. The debtor asked for and obtained a hearing held one day after it filed its applications contending that " . . . due to the urgency of the need for operating capital written notice of the applications for relief was impracticable". *Sullivan Ford* at 352. Although most of its unsecured creditors received no notice at all, the debtor gave its largest creditors informal notice which allowed them less than 24 hours to prepare for the hearing. The United States Trustee was also given informal notice of the application on the day preceding the date of the hearing and one hour prior to the commencement of the hearing the United States Trustee designated a committee of creditors.

■ The *Sullivan Ford* court noted that the timing of requests for ex parte relief such as requests for interim financing rests entirely within the control of the party requesting relief. *Id.* at 354. The Court noted further that for approximately six weeks before the hearing the debtor was aware of its serious financial condition and its need for working capital. Because of the extraordinary nature of the relief requested, because of the ex parte nature of the relief and because of the inadequate notice provided interested parties the court concluded that the relief requested should be available only " . . . upon a sufficient showing that immediate and irreparable injury, loss, or damage will result to the moving party or to the reorganization effort

before adverse parties or their counsel can be notified." *Id.* at 356. The court based this test upon the procedural safeguards provided for by Rule 65(b) of the Federal Rules of Civil Procedure which applies to temporary restraining orders.[2] Following this test, the court rejected Sullivan Ford's application for financing. A request for § 364(c) financing, however, is somewhat different from a request for a temporary restraining order. In the case of temporary restraining orders, the petitioning party normally seeks to preserve the status quo by preventing an act from being done. In the case of a request for interim financing, the petitioner seeks to alter the status quo through the obtaining of financing and through the granting of a priority. Therefore, this Court concludes that a debtor seeking interim financing through the granting of a § 364(c) priority should carry at least the same if not a heavier burden of proof than that a petitioner asking for a temporary restraining order must bear.

A major purpose of the Bankruptcy Reform Act of 1978 was to separate the judicial and administrative responsibilities of bankruptcy courts. The primary function of 11 U.S.C. § 102(1) was to give practical effect to the separation of the administrative and judicial functions by the elimination of the court's role as an advocate. Notice, therefore, is essential for the purpose of making all interested parties aware of applications, motions, and adversary proceedings to which they may want to object. Absent proper notice, the court is forced into an adversary role and must take it upon itself to protect the rights and interests of all entities which would have an interest in a proceeding.

"Subparagraph 102(1)(b)(i) authorizes relief without hearing where 'hearing is not requested timely by a party in interest . . . .' It would torture its purpose to use

**2.** Rule 65(b) of the Federal Rules of Civil Procedure provides

"A temporary restraining order may be granted without written or oral notice to the adverse party or his attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage

will result to the applicant before the adverse party or his attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting his claim that notice should not be required . . . ."

this provision to license action without a hearing where the party is entitled to be heard or afforded no notice of the request for relief. Subparagraph 102(1)(b)(ii) permits the court to authorize relief, without actual *hearing,* if 'there is insufficient time for a hearing to be commenced before such act must be done . . .,' but only after notice 'appropriate in the particular circumstances.' "

*Id.* at 354. (footnotes omitted.)

■ In the instant case, on the day before the hearing the debtors orally notified their largest unsecured creditors of their application. Although the United States Trustee may have been notified, no creditors committee was designated nor has one yet been designated. Although the debtors scheduled hundreds of creditors in their petitions, few received any notification of the application prior to the hearing. A duly constituted committee of creditors may under appropriate circumstances act for and on behalf of creditors; however, " . . . [i]n the absence of a duly constituted committee of creditors, there [is] no alternative but to provide each individual holder with whatever notice was appropriate in the particular circumstances . . . ." *Id.* at 354.

■ As stated, the timing of a request for ex parte relief usually lies within the control of the party requesting that relief. It can be done by design or neglect in order to deny other parties in interest adequate notice. The courts must closely scrutinize such requests, otherwise parties may be encouraged to delay their requests for ex parte relief until emergencies are clearly apparent and no other alternatives are available. In the instant case, the debtors could have filed their petitions in bankruptcy earlier in order to provide their creditors with adequate notice of the applications they now ask this court to approve. The debtors delayed filing their petitions although they were fully aware of their serious financial conditions for a considerable length of time. The debtors' principal officer testified he knew two or three weeks prior to the filing of the petitions that protection under the bankruptcy act was necessary.

■ In the instant case the debtor failed to offer into evidence the quantum of proof necessary to warrant the granting of ex parte relief. This Court is unaware of the extent to which the granting of a priority would infringe upon the rights of other creditors. Furthermore, insufficient evidence was produced indicating that the debtors would suffer immediate and irreparable injury, loss, or damage if the request for interim financing and the granting of a priority were denied. It is not uncommon for plants to close temporarily for economic reasons, including the over abundance of inventory or slow sales of existing inventory. This Court is satisfied that providing proper advance notice of the relief requested to all parties in interest would not cause an immediate or irreparable injury to the debtor or to the reorganization effort. Ex parte relief is not warranted under the circumstances found in the instant case.