**In re PHOTO PROMOTION ASSOCIATES, INC., Debtor.**

**Jeffrey L. SAPIR, Trustee in Bankruptcy of Photo Promotion Associates, Inc., Plaintiff,**

**v.**

**CPQ COLORCHROME CORP., DIVISION OF COPPINGER COLOR LAB, Defendant.**

**No. 87 Civ. 7355 (GLG).**

United States District Court, S.D. New York.

April 25, 1988.

Siegel, Sommers & Schwartz, New York City (Paul Milbauer, of counsel), for plaintiff.

Zalkin, Rodin & Goodman, New York City (Richard S. Toder, Neil E. Herman, of counsel), for defendant.

## MEMORANDUM DECISION

GOETTEL, District Judge:

This appeal follows from a decision of the bankruptcy court, the Honorable Howard Schwartzberg presiding, which denied appellant's attempt to classify a certain Chapter 11 claim as an administrative expense. *Sapir v. Coppinger Color Lab, Inc. (In re Photo Promotion Assoc., Inc.)*, 72 B.R. 606 (Bankr.S.D.N.Y.1987). Oral argument was heard on December 4, 1987, and we have wrestled mightily with the issues raised on this appeal since that time.

At the outset, we note the relative paucity of cases to which we have been referred by the parties which specifically address the issues before us. Our independent research has shed little additional light on these subjects. Further, we note that appellant has changed counsel since the argument before Judge Schwartzberg, and it does not appear to us that certain of the issues raised on appeal were fully presented before or addressed by the bankruptcy court. In light of these factors, we have decided that the prudent course is to re-' mand the case to the bankruptcy court, the court with proper jurisdiction over initial review and exploration of issues bearing on this claim.

**330**

## I. FACTS

On October 4, 1984, the debtor-appellee, Photo Promotion Associates, Inc. ("Photo Promotion"), a New York corporation formerly engaged in the sale of individual and family portraits mounted on wooden plaques, filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. It continued to operate the business as a debtor in possession pursuant to 11 U.S.C. § 1107 (1982 & Supp. IV 1986) until March 13, 1985, when the case was converted for liquidation under Chapter 7 and a trustee was appointed.

This appeal centers on an agreement between the debtor and the appellant, C.P.Q. Colorchrome Corp. ("Colorchrome"), a Tennessee corporation and division of Coppinger Color Lab, Inc. engaged in the business of processing photographs. The agreement in question was entered into by the parties on December 20, 1984 (the "agreement" or the "December 20 agreement"), while the debtor was operating under the aegis of Chapter 11. That agreement called for the appellant to provide photographic processing services for the debtor in an attempt to clear the debtor's backlog of unprocessed photographs. The debtor, however, was unable to pay cash for these services. In addition, the parties assumed that as many as one-third of the debtor's customers would reject the finished orders due to delays in receiving them. As a hedge against these circumstances, the agreement provided that the appellant would receive its payment directly from the debtor's customers in an amount equal to 150% of its costs—i.e., the agreement granted to Colorchrome a lien on the debtor's post-petition accounts receivable. Any amounts collected by Colorchrome in excess of the agreed-to processing fees would then be refunded to the debtor.

On December 30, 1986, the debtor's Chapter 7 trustee commenced an adversary proceeding in the bankruptcy court seeking, *inter alia*, a judgment declaring void that portion of the appellant's agreement with the debtor in possession which assigned the debtor's accounts receivable to the appellant, and directing the return of amounts collected by the appellant pursuant to that agreement. The trustee contended that the security interest granted by the December 20 agreement was conveyed in direct contravention of 11 U.S.C. § 364(c) (1982), which expressly provides that post-petition credit may not be secured by a lien on the property of the estate without first obtaining court approval after notice and hearing.[1]

Colorchrome counterclaimed, seeking to classify its claim under the agreement as a Chapter 11 administrative expense. Colorchrome conceded that it knew, when the agreement was executed, that the debtor was operating under Chapter 11. It further conceded that approval of the agreement was not sought from the bankruptcy court, the debtor's creditors, or the creditors' committee. Colorchrome nonetheless contended that when a lien agreement is executed in violation of section 364(c), and credit beneficial to the Chapter 11 estate is extended in the ordinary course of business pursuant to that agreement, the creditor is, at the least, entitled to assert its claim as a Chapter 11 administrative expense pursuant to section 364(a), outlined *supra* note 1.

The trustee moved for partial summary judgment on Colorchrome's counterclaim, which largely was granted. Judge

---

1. Section 364 of the Bankruptcy Code, which is referenced throughout this opinion, provides in pertinent part: ·

**§ 364. Obtaining credit**
(a) ... [T]he trustee may obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable ... as an administrative expense.
(b) The court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable ... as an administrative expense.

(c) If the trustee is unable to obtain unsecured credit allowable ... as an administrative expense, the court, after notice and hearing, may authorize the obtaining of credit or the incurring of debt—(1) with priority over any or all administrative expenses ...; (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or (3) secured by a junior lien on property of the estate that is subject to a lien.
11 U.S.C. § 364 (1982 & Supp. IV 1986) [hereinafter "section 364"].

Schwartzberg concluded that the debtor's assignment of its accounts receivable, without court approval pursuant to section 364(c), constituted an impermissible grant of a security interest by the debtor in possession. *Sapir*, 72 B.R. at 611–12. Further, he ruled that since the agreement in question involved the attempted assignment of a *secured* interest in non-compliance with section 364(c), and since section 364(a) grants administrative status only to the extension of *unsecured* credit in the ordinary course of business, Colorchrome was barred from seeking haven within the confines of administrative status granted under that subsection. *Id.* at 611. Colorchrome appeals that decision.[2]

## II. DISCUSSION

On appeal, there seem to be three separate bases expressly or implicitly urged by appellant as possible sources of authority allowing classification of Colorchrome's claim as an administrative expense: (1) as a matter of law, a failed creditor under section 364(c) is entitled to "fall back" (the court's term) to section 364(a) so long as the post-petition credit was extended in the ordinary course of business; (2) alternatively, it is argued that Colorchrome is entitled to administrative status under 11 U.S.C. § 503(b)(1) (1982 & Supp. IV 1986) ("section 503(b)(1)");[3] and (3) failing either (1) or (2), Colorchrome urges that the court invoke its inherent equitable authority and authorize Colorchrome's claim as an administrative expense.[4] We consider each of these in turn, outlining the reasons motivating our remand.

### (1) The "Fall Back" to Section 364(a)

In response to the trustee's motion for summary judgment, Colorchrome argued before the bankruptcy court that genuine issues of fact existed as to whether the December 20 agreement was in the ordinary course of business, whether there was good faith, and whether Colorchrome conferred a substantial benefit to the estate. *Sapir*, 72 B.R. at 609.[5] It does not appear that the "fall back" argument was clearly articulated before the bankruptcy court, as suggested by the manner in which Judge Schwartzberg dismissed Colorchrome's arguments. He found that Colorchrome's responses to the trustee's motion "are unavailable as a matter of law. The ordinary course of business exception to the need for court authorization relates expressly to obtaining *unsecured* credit and incurring *unsecured* debt, as stated in 11 U.S.C. § 364(a)." *Id.* at 611.

Colorchrome's argument, however, at least as presented on appeal, appears to be somewhat novel and deserving of broader attention. It is indisputable that post-petition credit was extended to the debtor. The appellant argues that, in light of the bankruptcy court's decision nullifying Colorchrome's lien, no secured interest was

2. The amount in question on appeal is $81,296.75. In the underlying action, Colorchrome actually counterclaimed for the total amount of $128,864.69. In deciding the trustee's motion for partial summary judgment, Judge Schwartzberg found that $30,013.55 of that amount was protected by an artisan's lien under Tennessee law, and that $16,360.00 was incurred pursuant to and may be protected by a court-approved agreement between the parties concerning post-Chapter 7 services rendered by the appellant. Pursuant to a subsequent stipulation of the parties, which was so ordered by the bankruptcy court, these figures were adjusted, with the net result being that the sum of $81,296.75 is the actual figure in question on appeal. It is that amount which appellant seeks to have classified as a Chapter 11 administrative expense. We note that at oral argument it was suggested that there may not be sufficient funds available from the estate to cover anything beyond Chapter 11 administrative expenses, and that even those may not be 100% recoverable. The importance of this appeal to appellant, therefore, is readily discernable.

3. That section provides that certain expenses necessary for the operation of the estate may be incurred as administrative expenses "[a]fter notice and a hearing."

4. We give appellant the benefit of the doubt on this last contention. It is not set forth in appellant's brief on appeal under a separate heading, but it is implicitly urged throughout the brief and is specifically mentioned in footnote 4 on page 9.

5. A fourth argument also was made as to whether the transaction amounted to a credit transaction at all, but that argument does not appear to be pertinent to this appeal.

ever created by the December 20 agreement. Consequently, the credit extended must be considered to be "unsecured." Colorchrome contends that this unsecured credit was extended in the ordinary course of Photo Promotion's business and that Colorchrome, therefore, is entitled to assert its claim as an administrative expense under section 364(a).

The crux of the bankruptcy court's decision focuses on the importance of the notice and hearing requirement embodied in section 364(c), ultimately striking down the lien granted by the December 20 agreement due to non-compliance with those requirements. On appeal, appellant does not contest the validity of the lien. In essence, appellant is claiming that it executed an agreement in an effort to ensure the maximum amount of protection it could obtain for its position—a security interest. With that protection stripped away, nothing in the law or the legislative history of section 364 suggests that the creditor is now prevented from "falling back" to the other sources of protection (administrative status) built into the Bankruptcy Code.

In support of its argument, appellant cites *Credit Alliance Corp. v. Dunning–Ray Ins. Agency, Inc. (In re Blumer)*, 66 B.R. 109 (Bankr.App. 9th Cir.1986). In that case, the creditor extended to the Chapter 11 debtor post-petition credit secured by a first priority deed of trust on the debtor's residence. The bankruptcy court issued an ex parte order approving the lien; no notice or opportunity for hearing was provided to the debtor's creditors. Following the debtor's conversion to Chapter 7, the bankruptcy panel for the Ninth Circuit struck down the court's ex parte order as violative of due process and, consequently, found that the creditor did not have secured status under section 364. *Id.* at 114. The court went on, however, to conclude that the creditor also was not entitled to assert its claim as an administrative expense under section 364(a) *since the loan was not made in the ordinary course. Id.* at 114–15. The fact that the court engaged in this latter analysis implicitly, if not expressly, suggests that it believed the creditor was not barred as a matter of law from "falling back" on section 364(a).

The bankruptcy court cites *Blumer* for the proposition that Colorchrome's failure to comply with the notice and hearing requirements of section 364(c), mandated by the dictates of procedural due process, is fatal to its security interest. *Sapir*, 72 B.R. at 612. There is no discussion of *Blumer*, however, concerning its "fall back" analysis. Given the fact that *Blumer* is virtually the only case to which we are referred which is directly on point, and in light of the potential impact a per se rule barring "fall back" may have on the availability of post-petition credit, the issue would seem deserving of additional attention.[6]

Of course, in remanding this issue we do not intimate that the bankruptcy court for this district is bound by *Blumer*, which it clearly is not. Indeed, despite counsel's eloquent urgings at oral argument, this court can think of reasons that militate in favor of a rule different from that suggested by *Blumer*.

First, it may be argued that the intent of the parties at the time the agreement was entered into must govern. Credit may be extended to either a Chapter 11 or Chapter 7 debtor. As Judge Schwartzberg noted, our inquiry here must be viewed in the context of Chapter 11. *Sapir*, 72 B.R. at 610. It was at this time that the parties entered into and operated under the terms of the agreement; it was at this time that Colorchrome extended credit; and it was at

---

**6.** Appellee cites *Blumer* as controlling, at least as to the issue of procedural due process. That issue, however, is not in dispute. Colorchrome has conceded that it has no security interest. The issue is whether, with its security interest invalidated, it is legally entitled to "fall back" to section 364(a). If *Blumer* controls as to that point, it suggests if anything that "fall back" is a legally available option. The only other case to which appellee refers this court is *Bezanson v. Indian Head Nat'l Bank (In re J.L. Graphics)*, 62 B.R. 750 (Bankr.D.N.H.1986). As discussed *infra* note 7 and accompanying text, however, different issues were before the court in *Bezanson*. It is not at all clear to us how *Bezanson* controls on the question of "fall back."

this time that Colorchrome was partly reaping the benefit of the lien.

Viewed in that context, we note that section 364(c) provides that only *"if the [debtor-in-possession] is unable to obtain unsecured credit"* may the court authorize, after notice and a hearing, the extension of secured credit. Based on this language, and the recognition that section 364(c) was designed as an inducement to reluctant but vital creditors, courts have required a showing by the debtor that credit could not be obtained in any other manner. *In re Crouse Group, Inc.*, 71 B.R. 544, 546, 549, 550 (Bankr.E.D.Pa.1987); *In re Glover, Inc.*, 43 B.R. 322, 325–26 (Bankr. D.N.M.1984). Section 364(c), therefore, is unavailable unless a prospective creditor has refused to extend credit under section 364(a).

It is conceivable, as appellant's counsel now implicitly argues, that Colorchrome would have extended unsecured credit had it simply been offered administrative status pursuant to section 364(a). The fact is, however, that the December 20 agreement was executed only with the lien in place, and we hasten to emphasize the unmistakable, underlying reasons for this occurrence. Photo Promotion was unable to pay cash for Colorchrome's services, and Colorchrome also feared that as many as one-third of Photo Promotion's customers would reject those goods processed by Colorchrome due to late delivery. As noted *supra,* Colorchrome sought and obtained the lien as a hedge against these circumstances. These facts certainly cut against any argument here being made that Colorchrome would have extended unsecured credit. Now that the debtor has converted to Chapter 7, Colorchrome cannot simply whitewash what it obviously considered to be crucial considerations when Chapter 11 credit was extended.

In sum, with the "bomb" now dropped and the case converted to Chapter 7, we cannot return to December 20, 1984, redraft the agreement, sans lien, and offer it for appellant's approval. It might be argued, therefore, that the only reasonable conclusion is that Photo Promotion intended to assign and Colorchrome intended to receive a security interest, and that the benefits of section 364(a) were insufficient to induce the extension of credit by the appellant. It may now be incongruous to grant appellant that which it found to be unacceptable while the debtor operated under Chapter 11.

Second, one simply cannot ignore the fact that, up until Photo Promotion's conversion to Chapter 7 on March 13, 1985, Colorchrome drained resources from the estate and directly benefitted from the lien extended pursuant to the December 20 agreement. To examine the type of credit which was extended after a bankruptcy court has since determined that an agreement was void adds nothing to an examination of the effects the agreement had on the parties while the agreement controlled their actions. During the period from December 20, 1984 until the case was converted to Chapter 7, the parties operated subject to the lien, and the appellant received substantial benefit from that lien during that period. Again, recall that Colorchrome was granted a lien on the debtor's post-petition accounts receivable equivalent to 150% of its costs. Further, the agreement provided that customer payments would be made *directly to Colorchrome.* Amounts that it received in excess of the agreed-to fees for its services to Photo Promotion were then to be refunded to the debtor. It might fairly be termed a charade of the most disingenuous sort for us now to pretend that no lien ever existed when it formed such an important part of the Chapter 11 relationship between the parties.

Third, and finally, we note that we are far from impressed with appellant's argument that a per se rule barring "fall back" as a matter of law works an unprecedented, "Draconian" result not contemplated by the statute, viz, that Colorchrome will be left to assert its claim as pre-petition, unsecured. To the contrary, courts have held that "it is possible that some post-petition creditors, upon conversion to Chapter 7, will enjoy administrative expense priority, and some will not. Mere post-petition incurrence is no longer in it-

**334**

self a guarantee of administrative priority." *In re Glover, Inc.*, 43 B.R. 322, 325 (Bankr.D.N.M.1984). Thus, creditors which have failed to satisfy the conditions of section 364(b) (which requires court approval of unsecured transactions not in the ordinary course) have sometimes been relegated to pre-petition, unsecured status. *John Deskins Pic Pac, Inc. v. Flat Top Nat'l Bank (In re John Deskins Pic Pac, Inc.),* 59 B.R. 809, 812 (Bankr.W.D.Va. 1986). Here we face the somewhat analogous situation of a creditor who operated without regard to the requirements for court approval under section 364(c). Although there are differences between the two situations, the point is that relegation of appellant's claim to pre-petition, unsecured status is not a uniquely harsh or unprecedented result.

In the final analysis, however, the above justifications for a per se rule barring "fall back" are simply the product of this court's speculation. They may exist between the lines of Judge Schwartzberg's opinion, but we would feel more comfortable with a clearer understanding of his rationale. A per se rule may have a substantial impact on the fuzzy world of post-petition credit; it is difficult for this court to tell with its limited experience and expertise in bankruptcy matters. We don't say that such a rule should not exist, but its foundation should rest on more than this court's speculative justifications. Consequently, we remand the "fall back" argument to the bankruptcy court for a clearer articulation of its views.

### (2) *Administrative Status Under Section 503(b)(1)*

■ Appellant also argues that, if section 364(a) is unavailable, it is entitled to a hearing on its claim for administrative status under section 503(b)(1). Such a claim would not be ripe for summary judgment, appellant contends, since issues of fact exist as to whether the credit extended by Colorchrome was of benefit to the estate, and a hearing should be held on that issue. Again, appellant has cited a case which seemingly supports its contention.

In *In re Patch Graphics,* 58 B.R. 743 (Bankr.W.D.Wis.1986), a Chapter 11 security interest was struck down after the debtor had converted to Chapter 7. The creditor then petitioned the court for classification of its claim as an administrative expense under section 503(b). Although that claim ultimately was denied (the creditor did not meet its burden of showing that the credit was necessary to and for the benefit of the estate), the fact that the court conducted a section 503(b) hearing obviously suggests that it thought such an avenue was available to a post-petition creditor who had failed, while the debtor was in Chapter 11, to take the steps necessary to properly secure its interest.

Again, we do not suggest that the bankruptcy court for this district is bound by *Patch Graphics;* it is not. The section 503(b) issue was not discussed at all in the bankruptcy court's decision, however. Thus, we cannot determine how the bankruptcy court views the interrelationship between sections 364 and 503, nor can we determine if the bankruptcy court believes that section 503(b) grants additional authority beyond section 364 for unsecured borrowing. *Cf.* H.R.Rep. No. 989, 95th Cong., 2d Sess. 57 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787 (noting section 364 governs "all obtainings of credit and incurring of debt by the estate").

Of course, we note that section 503(b) applies only to unsecured borrowing. Appellant again makes the argument that, since the bankruptcy court nullified its security interest (and, indeed, Colorchrome now concedes that it does not have a valid security interest), we are dealing with unsecured, post-petition credit. *Patch Graphics,* like *Blumer* in the section 364(a) context, provides support for this analysis. To the extent, however, as set forth *supra,* that the agreement here must be viewed for analytical purposes as secured even though the security ultimately was invalidated, section 503(b), like section 364(a), will be unavailing.

Because the section 503(b) issue was not specifically addressed in the bankruptcy

court's decision, we remand this issue for further consideration.

### (3) Use of the Court's Equitable Authority

■ Finally, appellant argues that, if it is unable as a matter of law to use sections 364(a) or 503(b), the bankruptcy court should invoke its inherent equitable authority and treat Colorchrome's claim as an administrative expense. In the past, it has been recognized that bankruptcy courts have inherent equitable authority to ratify, *nunc pro tunc*, borrowing not made in formal compliance with the requirements of the Bankruptcy Code. To the extent such authority continues to exist, this circuit has made clear that it must be "cautiously exercised" and used in only the most "exceptional circumstances." *In re American Cooler Co.*, 125 F.2d 496, 497 (2d Cir.1942).

It is not certain to us that the *American Cooler* issue was addressed by the bankruptcy court. The principal case cited in Judge Schwartzberg's decision, *Bezanson v. Indian Head Nat'l Bank (In re J.L. Graphics, Inc.)*, 62 B.R. 750 (Bankr.D.N.H. 1986), is an equitable case.[7] *Bezanson*, as Judge Schwartzberg noted, is remarkably similar factually to the instant case. Legally, however, there is a fundamental distinction, which may or may not prove to be important on remand. In *Bezanson*, the creditor was asking for *nunc pro tunc* ratification of its *lien*, which had been secured in non-compliance with section 364(c).

The court, highlighting the due process requirements underpinning section 364(c), and relying heavily on the fact that expedited court review of secured post-petition borrowing is available, concluded: "In this procedural context, in which relief is available in a matter of days—even hours if the circumstances are urgent—the rationale for permitting retroactive validation orders for *secured borrowing* and *attachment of liens* to post-petition transactions no longer exists." *Id.* at 754 (emphasis added).

The equitable issue presented by the instant case is different. Unlike the creditor in *Bezanson*, Colorchrome does not seek *nunc pro tunc* ratification of the lien. Rather, it concedes that there is no lien (due to non-compliance with section 364(c)) and that the court should use its equitable authority not to confirm the lien but to grant administrative status to the claim.

It may be, consistent with a broader reading of *Bezanson*, that *American Cooler* authority may not be invoked in a failed section 364(c) case—whether or not the equitable remedy sought is confirmation of the lien, as in *Bezanson*, or approval of administrative status, as here. *Cf. Norwest Bank Worthington v. Ahlers*, —— U.S. ——, 108 S.Ct. 963, 968–69, 99 L.Ed.2d 169 (1988) (holding that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code"). It is not clear to us, however, that such was Judge Schwartzberg's holding.[8]

---

7. Both parties seem to misunderstand the application of *Bezanson* to the instant case. Appellee, in particular, believes it is controlling on the issue of whether Colorchrome, as a failed creditor under section 364(c), may now "fall back" as a matter of law to section 364(a). We have difficulty understanding this assertion. First, *Bezanson* involves equitable, and not legal, considerations. Second, the issue in that case, as will be discussed *infra*, was *nunc pro tunc* ratification of a *lien*, which was denied. The issue here is equitable ratification of a claim for administrative status. Colorchrome has conceded that it is not entitled to a lien. Appellee might argue (although it did not in its papers on this appeal) that since equitable authority can be invoked only if the remedy at law is inadequate, *Bezanson* implicitly stands for the proposition that the creditor in that case had no

available legal remedy (such as "fall back"). Even if that were true, however, the *Bezanson* creditor was not looking to "fall back" to administrative status—either equitably or legally. It was seeking ratification of its lien.

8. This is particularly so given the context in which *Bezanson* was cited by the bankruptcy court. It appears to us that the principle point being made was that procedural due process requires notice and hearing. Indeed, *Bezanson* mobilized this argument in support of its decision to deny *nunc pro tunc* ratification of the *lien*. Here, Colorchrome concedes the vitality of those due process considerations and, perhaps in recognition thereof, does not seek ratification of the lien. The question, therefore, is squarely presented—does the bankruptcy court still possess sufficient equitable authority to reach out and grant Colorchrome administra-

Alternatively, it may be that, to the extent the secured/unsecured distinction remains the linchpin for analysis in this case, *Bezanson* is directly on point. If we must view Colorchrome's claim, for analytical purposes, as secured (albeit failed), then *American Cooler* authority could be used only to ratify the lien—not rewrite the December 20 agreement.

Again, we emphasize that it is not our difference with either of these conclusions that motivates our decision to remand; rather, it is our desire to operate with a clear understanding of the bankruptcy court's views of these matters.

## Conclusion

Given our limited expertise in bankruptcy matters, and the paucity of cases to which we have been referred, it is difficult for us to gauge the impact that resolution of these issues will have on that netherworld of post-petition financing. Consequently, we feel the prudent course is to err on the side of caution in this case, and our remand is fashioned with those concerns in mind. Judge Schwartzberg, with his considerable expertise in such matters, should be given the opportunity to have these issues fairly and fully presented before we rule on appeal. We are not convinced, particularly in light of the change of counsel, that such a complete presentation was made before him. Of course, in remanding we do not suggest that all of these issues were properly and timely raised before Judge Schwartzberg on the initial motion. If they were not, Colorchrome may have waived its right to raise them on appeal. We remand only so that those issues properly and timely raised in the first instance may be given the attention they appear to deserve.

In remanding, without affirming or reversing, we of course intimate no favor or disfavor with the outcome of Judge Schwartzberg's original decision. It was difficult for us, however, to glean from that decision the underlying rationale, nor could we satisfy ourselves that Judge Schwartzberg was fairly given "first crack" at each of these issues. This court has great respect for Judge Schwartzberg. He is one of this country's most esteemed bankruptcy judges, and his reputation is richly deserved. More than anything else, we remand so that we may have the clear benefit of his views.

REMANDED.

tive status in light of the failed agreement under section 364(c)?