In re PHOTO PROMOTION ASSOCIATES, INC., Debtor.

Jeffrey L. SAPIR, Trustee in Bankruptcy of Photo Promotion Associates, Inc., Plaintiff,

v.

CPQ COLORCHROME CORP., DIVISION OF COPPINGER COLOR LAB, Defendant.

Bankruptcy No. 84 B 20417.

United States Bankruptcy Court, S.D. New York.

July 1, 1988.

Siegel, Sommers & Schwartz, New York City, (Leonard Schwartz, of counsel), for plaintiff.

Zalkin, Rodin & Goodman, New York City, (Richard S. Toder, and Neil E. Herman, of counsel), for defendant.

HOWARD SCHWARTZBERG,
Bankruptcy Judge.

Pursuant to a decision dated April 30, 1987, this court granted the Chapter 7 trustee's partial summary judgment motion and ruled that an agreement between the debtor and the defendant, C.P.Q. Colorchrome Corp., a division of Coppinger Color Lab, Inc. ("Colorchrome"), which agreement was entered into after the debtor filed its Chapter 11 petition and before the case was converted for liquidation under Chapter 7 of the Bankruptcy Code, was not enforceable. *In re Photo Promotion Associates, Inc.*, 72 B.R. 606 (Bankr.S.D.N.Y. 1987). The agreement violated 11 U.S.C. § 364(c) because no court approval was obtained, with the result that Colorchrome could not assert a secured interest in the debtor's accounts receivable which the then Chapter 11 debtor assigned to Colorchrome as security for Colorchrome's finishing charges for processing the debtor's backlog of unprocessed photographs with respect to the debtor's sale of individual and family portraits mounted on wooden plaques. This court also denied Colorchrome's administrative expense claim pursuant to 11 U.S.C. § 364(a) because this section grants administrative status only to the extension of *unsecured* credit in the ordinary course

of business, whereas the agreement relied upon by Colorchrome involved an assignment of accounts receivable for a secured interest in violation of 11 U.S.C. § 364(c).

On appeal, Colorchrome did not contest this court's ruling that the debtor's assignment of its accounts receivable to Colorchrome did not create a secured interest because of the absence of court approval, as required under 11 U.S.C. § 364(c). Instead, Colorchrome argued that a failed secured claimant under 11 U.S.C. § 364(c) is entitled to "fall back" to 11 U.S.C. § 364(a) so long as the post-petition credit was extended in the ordinary cause of business. Alternatively, Colorchrome argued that it was entitled to an administrative status under 11 U.S.C. § 503(b)(1), or, at least, that the court should invoke its inherent, equitable authority and authorize Colorchrome's claim as an administrative expense.

The District Court concluded that the "fall back" issue "would seem deserving of additional attention". However, the District Court noted:

> [T]hat section 364(c) provides only *'if the [debtor-in-possession] is unable to obtain unsecured credit'* may the court authorize, after notice and a hearing the extension of secured credit. Based on this language and the recognition that section 364(c) was designed as an inducement to reluctant but vital creditors, courts have required a showing by the debtor that credit could not be obtained in any other matter. [citations omitted] Section 364(c), therefore is unavailable unless a prospective creditor has refused to extend credit under section 364(a).

*Sapir v. C.P.Q. Colorchrome Corp., Division of Coppinger Color Lab,* 89 B.R. 328, 333 (S.D.N.Y.1988).

The District Court also questioned the soundness of Colorchrome's quest for an unsecured administrative expense claim, and said:

> It might be argued, therefore, that the only reasonable conclusion is that Photo Promotion intended to assign and Colorchrome intended to receive a security

interest, and that the benefits of Section 364(a) were insufficient to induce the extension of credit by the appellant. It may now be incongruous to grant appellant that which it found to be unacceptable while the debtor operated under Chapter 11.

*Sapir v. C.P.Q. Colorchrome Corp., a Division of Coppinger Color Lab,* supra, 333.

In light of these reservations as to the soundness of Colorchrome's "fall back" argument, the District Court remanded to this court Colorchrome's quest for administrative status so that this court may be given 'first crack' at this issue.

### FINDINGS OF FACT

1. On December 20, 1984, a little over two months after the debtor, Photo Promotion Associates, Inc. filed for reorganizational relief under Chapter 11 of the Bankruptcy Code on October 4, 1984, and before the case was converted for liquidation under Chapter 7 of the Code on March 13, 1985, the debtor in possession entered into a written agreement with the defendant, Colorchrome. Under this contract Colorchrome agreed to do photo printing for the debtor in order to clear up the debtor's backlog of unprocessed orders for family portraits at specific rates. The contract provided that the debtor assigned to Colorchrome, as security, the accounts receivable generated by the Colorchrome's finishing and shipping of the backlog of photo printing, which were to be applied against Colorchrome's printing fees, after which the balance collected by Colorchrome would be returned to the debtor.

2. Colorchrome conceded that it knew, when the agreement was executed, that the debtor was operating under Chapter 11. It is further conceded that approval of the agreement was not sought from the bankruptcy court, the debtor's creditors, or the creditors' committee.

3. In the adversary action brought by the Chapter 7 trustee to set aside the agreement because it was not approved by the court pursuant to 11 U.S.C. § 364(c), Colorchrome counterclaimed for $128,-

864.69. In deciding the trustee's motion for partial summary judgment, the court found that $30,013.55 was protected by Colorchrome's artisan's lien under Tennessee law; $16,360.00 was incurred pursuant to a court-approved post-Chapter 7 agreement between the trustee and Colorchrome. Pursuant to a court-approved stipulation, the sum of $81,229.75 is the amount which Colorchrome seeks to have classified as a Chapter 11 administrative expense.

4. At the hearing on the remand, Colorchrome's vice president, Gene Harrell, testified that the December 20, 1984 agreement between Colorchrome and the debtor was negotiated for the purpose of securing Colorchrome's charges to the debtor for photoprocessing because Colorchrome would not rely on the debtor's unsecured credit. He said that where unsecured credit was a question, it was the practice of Colorchrome to obtain security for the services performed by Colorchrome.

5. Joel Feldstein, a vice president of Esquire Color Labs, Inc., testified that after the debtor filed its Chapter 11 petition, Esquire did not want to grant unsecured credit to the debtor. Business was conducted on a C.O.D. basis. Thereafter court approval was obtained for an agreement between the debtor and Esquire whereby Esquire collected 12% of the debtor's receivables to cover Esquire's finishing charges. The debtor received the remaining 88% of the accounts receivable processed by Esquire.

## DISCUSSION

Colorchrome was unwilling to extend unsecured credit to the debtor in possession in the Chapter 11 case in the ordinary course of business pursuant to 11 U.S.C. § 364(a), which would be allowable under 11 U.S.C. § 503(b)(1) as an administrative expense. Accordingly, Colorchrome sought to secure its photo finishing charges to the debtor by obtaining an assignment of the debtor's accounts receivable. However, Colorchrome failed to seek court authorization of the agreement between the parties as required under 11 U.S.C. § 364(c), notwithstanding that Color-

chrome knew that the debtor was a debtor in possession in a Chapter 11 case, with the result that Colorchrome's secured claim to the debtor's accounts receivable was successfully challenged by the Chapter 7 trustee after the debtor's case was converted for liquidation under Chapter 7 of the Bankruptcy Code. In light of these facts, the District Court has remanded Colorchrome's appeal of this court's ruling for a determination as to whether Colorchrome may "fall back" under 11 U.S.C. § 364(a) as a creditor holding an unsecured debt incurred in the ordinary course of business, allowable under 11 U.S.C. § 503(b)(1) as an administrative expense.

The case of *Blumer v. Credit Alliance Corp. (In re Blumer )*, 66 B.R. 109 (9th Cir. BAP 1986), *aff'd* without opinion 826 F.2d 1069 (9th Cir.1987), which was cited (*In re Photo Promotion Associates, Inc.*, 72 B.R. at 611–612) by this court in the quotation extracted from the opinion in *Berzanson v. Indian Head National Bank (In re J.L. Graphics, Inc.)*, 62 B.R. 750 (Bankr.D.N.H. 1986), is relied upon by Colorchrome for the proposition that following a disallowance of a post-petition secured status, the disappointed creditor may "fall back" to an unsecured, ordinary course of business administrative claim under 11 U.S.C. § 364(a). The *Blumer* case did not sustain the "fall back" argument because the court found that the disallowed secured claim was not incurred in the ordinary course of business and did not satisfy 11 U.S.C. § 364(a). However, Colorchrome argues that if the disallowed secured claim had been made in the ordinary course of business, the court might have allowed it as an administrative expense, otherwise the court would not have referred to 11 U.S.C. § 364(a).

The fact that the *Blumer* court referred to 11 U.S.C. § 364(a) does not mean that the court intended to suggest that if a creditor's secured claim is invalidated under 11 U.S.C. § 364(c), the claimant may then "fall back" to 11 U.S.C. § 364(a) as an unsecured administrative claim incurred in the ordinary course of business. The Appellate Panel in the *Blumer* case merely pointed out that the claimant did not satis-

fy either 11 U.S.C. § 364(c) or 11 U.S.C. § 364(a). The claimant's secured position in the *Blumer* case was not sustained because the order approving the secured transaction was erroneously granted *ex parte*, without a "notice and a hearing" as required under 11 U.S.C. § 364(c). Had the claimant originally sought an administrative expense claim under 11 U.S.C. § 364(a) it would not have succeeded because the credit advanced was not in the ordinary course of business as required under that section. In the instant case, Colorchrome was unwilling to extend unsecured credit in the ordinary course of business. Now that it has been determined that Colorchrome's claim for finishing services is not secured by the debtor's accounts receivable, Colorchrome would like to "fall back" to the status of a creditor who was originally willing to extend unsecured credit in the ordinary course of business of a debtor in possession, so as to qualify for administrative expense status under 11 U.S.C. § 364(a) and 11 U.S.C. § 503(b).

■ The fact that a liability was incurred by a debtor after a Chapter 11 petition was filed does not automatically mean that such liability is entitled to an administrative priority. Thus, in *In re Jartran*, 732 F.2d 584 (7th Cir.1984) an advertising agency published advertisements for the debtor after the Chapter 11 petition was filed, based upon orders submitted by the prepetition debtor, which were beneficial to the post-petition debtor. The Seventh Circuit Court of Appeals ruled that an administrative priority is granted to post-petition creditors in order to induce them to furnish unsecured credit to a debtor in possession. The advertising agency had dealt with the prepetition debtor and was not induced by the post-petition debtor to extend unsecured credit to the post-petition Chapter 11 debtor. The crucial factor in the denial of the administrative priority claim under 11 U.S.C. § 364(a) was considered to be the absence of any evidence that the creditor was willing to extend unsecured credit to a post-petition debtor and that credit was granted to the prepetition debtor and not to the post-petition debtor. The fact that the advertising agency's services were signifi-

cant and of value to the post-petition debtor did not sustain the advertising agency's position that even if the literal language of 11 U.S.C. § 364(a) had not been met, considerations of equity and fairness should dictate a result favorable to the advertising agency. The Seventh Circuit Court of Appeals rejected the equity argument, noting that all creditors, to some extent, assume the risk of bankruptcy and that a granting of administrative priority to the advertising agency would be at the expense of other unsecured creditors of the debtor. The fact that a post-petition benefit was conferred upon the debtor did not suffice to create an administrative priority. The court rejected this argument, saying

> The logic of appellants' fairness argument would apparently require priority for all creditors whose extension of credit *benefited* the debtor-in possession regardless of when the credit was extended. This construction would be contrary to the reason the priority was created: as a practical incentive to achieving reorganization for the benefit of all creditors.

*In re Jartran, Inc.*, 732 F.2d at 590.

■ Bankruptcy Code § 364 was structured with an escalating series of inducements which a debtor in possession may offer to attract credit in the post-petition period. First, creditors who are willing to extend unsecured credit in the ordinary course of business are offered the inducement of an administrative priority under 11 U.S.C. § 364(a). If a creditor is willing to extend unsecured credit, but not in the ordinary course of business, such credit may be authorized by the court, after notice and a hearing, pursuant to 11 U.S.C. § 364(b). If creditors are unwilling to extend unsecured credit to a debtor in possession, further inducements are offered, with court approval after notice and a hearing, including super priority administrative expenses under 11 U.S.C. § 364(c)(1); secured liens on unencumbered property pursuant to 11 U.S.C. § 364(c)(2); junior liens on encumbered property in accordance with 11 U.S.C. § 364(c)(3), or senior or equal liens pursuant to 11 U.S.C. § 364(d). The mere fact that credit was extended in a post-peti-

tion period does not mean that an administrative priority will automatically attach, notwithstanding the origin of the credit. *See In re Glover*, 43 B.R. 322, 325 (Bankr. D.N.M.1984).

■ In the instant case, Colorchrome was unwilling to extend unsecured credit in the ordinary course of business as an administrative expense. Colorchrome attempted to obtain a secured position with respect to the debtor's accounts receivable, but failed because it did not obtain court approval as required by 11 U.S.C. § 364(c). It does not follow that Colorchrome may now "fall back" to the status of a creditor who was induced to extend unsecured credit in the ordinary course of business to a debtor in possession as an administrative priority expense in accordance with 11 U.S. C. § 364(a). Colorchrome was induced to extend credit in exchange for a secured position. Having failed to obtain court approval, it may not now "fall back" to the position of a creditor who was induced to extend unsecured credit in the ordinary course of business simply because this court ruled that Colorchrome did not comply with 11 U.S.C. § 364(c) and that its claim is now unsecured. Colorchrome took a secured position and collected the proceeds from the accounts receivable which the debtor assigned to Colorchrome as security for its photoprocessing services. As stated by the District Court:

> Now that the debtor has converted to Chapter 7, Colorchrome cannot simply whitewash what it obviously considered to be crucial considerations when Chapter 11 credit was extended.

> \* \* \* \* \* \*

> In sum, with the "bomb" now dropped and the case converted to Chapter 7, we cannot return to December 20, 1984, redraft the agreement, sans lien, and offer it for appellant's approval. ... It might fairly be termed a charade of the most disingenuous sort for us now to pretend that no lien ever existed when it formed such an important part of the Chapter 11 relationship between the parties.

*Sapir v. C.P.Q. Colorchrome Corp., Division of Coppinger Color Lab*, 89 B.R. at 333.

There are no cases supporting Colorchrome's "fall back" argument because 11 U.S.C. § 364 was not structured to give a creditor, who violates the requirement under 11 U.S.C. § 364(c) for court approval, two bites of the apple and to be able to "fall back" to the position of a creditor who was willing to extend unsecured credit to a debtor pursuant to 11 U.S.C. § 364(a). If Colorchrome qualifies for administrative priority status it will be because of the application of another section of the Bankruptcy Code and not because Colorchrome may "fall back" from subsection (c) to subsection (a) in the same section.

### Administrative Expense Claims under 11 U.S.C. § 503

Apart from 11 U.S.C. § 364(a), administrative expense allowances are authorized under 11 U.S.C. § 503. This section was not originally addressed by the parties. Thus, administrative expenses may be permitted under 11 U.S.C. § 503(b)(1)(A) for the actual, necessary expenses of preserving the estate. A post-petition creditor whose security interest was not perfected in *In re Patch Graphics*, 58 B.R. 743 (Bankr. W.D.Wisc.1986) was not precluded, as a matter of law, from applying for an administrative expense allowance under 11 U.S.C. § 503(b)(1)(A) after its post-petition lien was invalidated. However, the post-petition creditor was unable to satisfy its burden of proof in support of its administrative expense claim. Similarly, in *In re Pizza of Hawaii, Inc.*, 69 B.R. 60 (Bankr.D. Hawaii 1986) a post-petition lender was denied priority status under 11 U.S.C. § 364(c) or (d) because of the absence of notice and a hearing. Nonetheless, a post-petition priority was allowed as an administrative claim under 11 U.S.C. § 503.

■ The fact that Colorchrome was not induced to extend unsecured credit to the debtor pursuant to 11 U.S.C. § 364(a) does not preclude Colorchrome from asserting an administrative priority claim for the actual and necessary expenses which it in-

curred in preserving the orders from the debtor's customers for mounted individual and family portraits. The orders were of no value to the estate unless they were processed. Colorchrome developed and processed approximately 34,000 orders and shipped them to the debtor during the Chapter 11 case for delivery to the debtor's customers at a time when other film processors were unwilling to ship the debtor's completed orders without payment for past bills. Colorchrome is entitled to an administrative expense priority for processing and shipping those orders apart from its valid artisan's lien of $30,013.55 and its proper post-Chapter 7 claim of $16,360, which was previously approved by this court. However, Colorchrome must remit to the trustee the balance which it collected from the debtor's customers pursuant to the invalidated security agreement and which were applied in reduction of Colorchrome's processing charges. After Colorchrome remits the collected funds to the trustee, the unpaid balance of its claim for processing and shipping the debtor's orders may be asserted as an administrative priority in the Chapter 11 case in accordance with 11 U.S.C. § 503(b)(1)(A), subject to the super priority expenses incurred in the superseded Chapter 7 case pursuant to 11 U.S.C. § 726(b) and to any offsets or quality disputes claimed by the trustee. Having lost its secured interest in the debtor's accounts receivable, Colorchrome should not be further penalized for failing to comply with 11 U.S.C. § 364(c), nor should the creditors in the Chapter 11 case receive a windfall for the processing services which Colorchrome performed for the debtor during the Chapter 11 period and before the case was converted for liquidation under Chapter 7 of the Bankruptcy Code.

## CONCLUSIONS OF LAW

1. After having failed to sustain a secured interest in the debtor's accounts receivable pursuant to 11 U.S.C. § 364(c), Colorchrome may not "fall back" to the status of a claimant with an unsecured debt incurred in the ordinary course of business, allowable as an administrative expense pursuant to 11 U.S.C. § 364(a) and 11 U.S.C. § 503(b)(1).

2. Colorchrome shall remit to the trustee all proceeds it received from the debtor's customers with respect to the invalidated assignment of the debtor's accounts receivable, including the $81,229.75 which Colorchrome has retained as an administrative expense pursuant to its claim under 11 U.S.C. § 364(a).

3. After remitting all proceeds received from the debtor's customers, Colorchrome may assert an administrative expense claim for the unpaid processing and shipping charges incurred in finishing the debtor's orders or necessary expenses in preserving the value of such orders, in accordance with 11 U.S.C. § 503(b)(1)(A), subject to the super priority administration expenses in the superseding Chapter 7 case, as authorized under 11 U.S.C. § 726(b), and further subject to any offsets or quality disputes claimed by the Chapter 7 trustee.

SETTLE ORDER on notice.