In re Thaddeus J. SOBIECH, Sr., d/b/a Ted Sobiech Farms, Debtor.

**Bankruptcy No. 86–30428.**

United States Bankruptcy Court, S.D. New York.

March 19, 1991.

Granik Silverman Sandberg Campbell Nowicki Resnik by Paul V. Nowicki, New City, N.Y., for movant-debtor.

Harp & Harp by Wendell D. Harp, New Paltz, N.Y., Patrick J. O'Neill, Vernon, N.J., for respondent Mulligan.

Birbrower, Montalbano, Condon & Frank, P.C. by Richard H. Sarajian, New City, N.Y., for respondent's partner George Whitaker.

Eric C. Kurtzman, Nanuet, N.Y., trustee.

## DECISION ON DEBTOR'S OBJECTION TO ADMINISTRATION EXPENSE PROOF OF CLAIM BY UNDERSECURED POST–PETITION LENDER

JEREMIAH E. BERK, Bankruptcy Judge.

This is a motion filed by the Chapter 7 debtor, Thaddeus J. Sobiech, Sr. ("debtor"), on November 28, 1990 pursuant to Bankruptcy Rule 3007 ("B.R.") objecting to the amended proof of claim filed by Peter E. Mulligan ("Mulligan") on August 9, 1988 and designated as Claim Number 96 on the clerk's claims register. Claim Number 96 was filed by Mulligan[1] as a secured claim pursuant to Bankruptcy Code § 364, 11 U.S.C. § 364 ("Code"), in the amount of $536,262.12. The motion seeks an order determining, *inter alia*, that Claim Number 96 is not an administrative claim with priority over other administrative claims. Evidentiary hearings were held on January 30, 1991 and concluded on March 13, 1991.

---

**1.** At the March 13, 1991 hearing on this motion, Attorney Richard H. Sarajian appeared on behalf of George Whitaker, who claims to be a partner with Mulligan on the subject proof of claim. To date, however, no documentation has been submitted to establish that the proof of claim belongs to anyone other than Mulligan individually.

## I. FINDINGS OF FACT

On October 23, 1986, the debtor filed a petition for relief under Chapter 11. The debtor was engaged in the onion farming business and continued as a debtor in possession throughout the Chapter 11 case.

During the following spring, the debtor moved for an order permitting the sale of 71 acres of land owned by the debtor but not used in connection with the onion farm and authorizing borrowing from Vernon Valley Development Corporation in the amount of $600,000.00. Due to certain procedural defects unrelated to the instant matter, a hearing on that motion was not held. Upon subsequent application of the debtor, this court entered an Order to Show Cause on March 25, 1987 setting a hearing on whether the debtor should be authorized to sell 71 acres to, and obtain credit in the sum of $500,000.00, from Mulligan. Creditor's Exhibit C. The Order to Show Cause stated that a purpose of the hearing would be to consider whether the debtor should be authorized "pursuant to 11 U.S.C. Section 364(c)(2), to obtain credit in the sum of $500,000.00 from Peter E. Mulligan and/or his assigns to be secured and repaid in accordance with the terms and conditions set forth" in the debtor's affidavit submitted in support of the Order to Show Cause. *Id.* The Order to Show Cause required that notice be given to all secured creditors, the twenty largest unsecured creditors, the official unsecured creditors' committee and its attorney, and the Office of the United States Trustee. By affidavit annexed to the Order to Show Cause, the debtor stated that he was unable to obtain financing despite "Herculean efforts" and that "[a]ll attempts to obtain financing [had] been turned down with the exception of.... Mr. Mulligan's offer of a $500,-000.00 loan to be secured by the debtor's crop for the 1987 season...." *Id.* The debtor noted further:

As security for the repayment of the indebtedness, the lender is requesting that the debtor obtain from the Bankruptcy Court, a security interest under Section 364(c)(2) on the growing crops and the proceeds thereof for the 1987 growing season. The crop, and its pro-

ceeds are not currently subject to any liens.

*Id.*

After a hearing on April 3, 1987, the motion to obtain the credit was granted. The debtor was directed to submit an order authorizing the borrowing with the subjoined consent of the creditors' committee attorney. On April 6, 1987, this court entered the "Order Authorizing Debtor in Possession to Obtain Credit and Give Security Therefor Pursuant to 11 U.S.C. [§] 364(c)(2)". Creditor's Exhibit D. The order provided in relevant part:

ORDERED, that pursuant to 11 U.S.C. § 364(c)(2):

1. The debtor be and he is hereby authorized to incur the above described indebtedness solely for farming purposes during 1987 by executing such loan documents as may be reasonably required by the lender in accordance with the terms set forth in the above findings;

2. All or any such indebtedness which may now or from time to time hereafter be owing by the debtor to the lender shall be, and hereby is secured by: (A) a security interests [sic] in debtor's crops and the proceeds thereof for the 1987 growing season;

3. The entering into, execution, performance and consummation of the subject transaction, the line of credit agreement and security documents by the debtor hereby are authorized.

4. All acts of the debtor herein pertaining to his transaction with the lender as authorized by the Court shall be binding on any successor to the debtor, including without limitation any successor trustee appointed under any Chapter of the Bankruptcy Code.

*Id.*

Upon the debtor's application under Code § 1112(a), an order converting his case to one under Chapter 7 was entered March 10, 1988. The following day Eric C. Kurtzman was appointed Chapter 7 trustee.

The parties stipulate that the principal amount now owed Mulligan is $413,332.33. This figure represents the balance due af-

ter the 1987 onion-crop collateral was disposed of by Mulligan and the Chapter 7 trustee.

## II. DISCUSSION

Debtor's objection to Mulligan's proof of claim raises the following issues: (A) whether the debtor has standing to make the instant motion; (B) whether the April 6, 1987 Order should be set aside on the ground of mistake pursuant to Fed.R. Civ.P. 60(b)(1); (C) whether the April 6, 1987 Order implicitly granted Mulligan an administrative priority under Code § 364(a), (b) or (c)(1) in conjunction with the explicitly granted secured status under Code § 364(c)(2); and (D) whether the $413,332.33 deficiency resulting after disposition of the onion-crop collateral is entitled to an administrative expense priority under Code § 364.

### A. Standing

■ Mulligan asserts that the debtor lacks standing pursuant to B.R. 3007 to object to his claim. In support of this contention, he cites *Vreugdenhil v. Hoekstra (In re Vreugdenhil)*, 773 F.2d 213 (8th Cir.1985) and *Matter of Silverman*, 10 B.R. 734 (Bankr.S.D.N.Y.1981), *aff'd*, 37 B.R. 200 (S.D.N.Y.1982). This authority is inapposite. In *Vreugdenhil*, the Chapter 7 debtors brought an action against several creditors for a determination of the nature, validity, extent and priority of their secured claims. Although the court noted that disposition of property of the estate was the province of the Chapter 7 trustee, it specifically declined to determine whether the debtors had standing to make such objections. The Court noted, "[A]lthough we need not decide today whether appellants [the debtors] lack standing, or whether instead the trustee, as representative of the estate, is the real party in interest, we agree with the district court that appellants may not maintain this suit without participation by the trustee." *Vreugdenhil v. Hoekstra (In re Vreugdenhil)*, 773 F.2d at 216.

The court in *Silverman* on the other hand did address this issue. It held that

"[i]t is hornbook law that a bankrupt is restricted to objecting to creditors' claims only in cases where there is no trustee who could properly object or where a disallowance of the claim objected to would produce a surplus for the bankrupt." *Matter of Silverman*, 10 B.R. at 735. In support of this conclusion, the court cited the 14th edition of *Collier on Bankruptcy*. We note, however, that *Silverman* concerned a case under Chapter IV of the former Bankruptcy Act, and what was "hornbook law" under it no longer pertains, as the *15th edition* of *Collier on Bankruptcy* illustrates:

> The question of who may object to a claim is not answered by Rule 3007 because it is set out in section 502 of the Code. Section 502 provides that an objection may be made by a party in interest....
>
> "Party in interest" is not a defined term, although it is used throughout the Code. Clearly, a party in interest is one who has an interest in the debtor's case. Thus, the debtor is a party in interest as is the trustee.

8 L. King, *Collier on Bankruptcy* ¶ 3007.03[2] (15th ed. 1990).

We see no reason why the debtor should be denied party-in-interest status with standing to object to proofs of claim. Allowance or disallowance of Mulligan's claim will affect the distribution to other creditors in the case, and the debtor should not be denied the opportunity to raise and be heard on such issues.

Although some courts have limited the standing of a Chapter 7 debtor to object to claims where the objection may interfere with the ability of the trustee to administer the case, *see, e.g., In re Rhoten*, 44 B.R. 741, 743 (Bankr.M.D.Tenn.1984), such is not the situation here. In response to the instant motion, the Chapter 7 trustee on December 19, 1990 filed an affidavit stating that he "supports the ability of the Debtor to object to Mulligan's claim". This objection by the debtor is not one that interferes with the administration of the case.

### B. Mistake

■ At the hearing held March 13, 1991, Mulligan raised for the first time the issue of mistake regarding the April 6, 1987 Order. Specifically, Mulligan alleges that the Order was mistakenly entered pursuant to Code § 364(c)(2) only, when it should have also granted Mulligan an unsecured administrative expense priority under either Code § 364(a), (b) or (c)(1). This argument, however, fails in light of the clear dictates of Fed.R.Civ.P. 60(b). That Rule, applicable herein under B.R. 9024, provides that a motion seeking to relieve a party from an order on the ground of mistake must be made within a "reasonable time" and "not more than one year after the … order … was entered[.]" Here, nearly *four* years have elapsed since the Order now questioned by Mulligan was entered. Accordingly, Mulligan cannot seek to set aside the April 6, 1987 Order as entered by mistake.

### C. Scope of the April 6, 1987 Order

■ Mulligan next argues that the April 6, 1987 Order implicitly provides that his claim is entitled to administrative expense status under either Code § 364(a), (b) or (c)(1). This argument fails based on the clear and unambiguous language of the Order.

As has long been the practice of this court regarding the entry of all orders, the April 6, 1987 Order made specific reference to the authority under which it was granted. In this case, the Order referred *solely* to Code § 364(c)(2). Also, the text of the Order itself shows that it was entered under that provision of the Code only and none other.

Further, if we were aware that an unsecured administrative expense priority had been sought by Mulligan, we would have insisted that there be compliance with S.D. N.Y. Local Bankruptcy Rule 47. This Rule requires that a motion for authority to obtain credit or incur debt "shall expressly state whether priority over any and/or all administrative expenses specified in Section 503(b)(2) or 507(b) of the Code is sought." This Rule attempts to avoid the result obtained in *General Electric Credit Corp. v.*

*Levin & Weintraub (In re Flagstaff Foodservice Corp.),* 739 F.2d 73 (2d Cir.1984). In that case, the creditor received a "superpriority" lien pursuant to a financing order. Other administrative expense claimants, including the debtor's attorneys, subsequently discovered that by virtue of the "superpriority" under Code § 364(c)(1), insufficient funds remained to pay their claims. To avoid repetition of such harsh consequences, Rule 47 requires the motion to specify whether there will be a "carve out" for any administrative expenses. Were we to find, retroactively, that the April 6, 1987 Order primes other administrative expense creditors without prior notice to them, such would contravene the intent of Rule 47 and prejudice their right to receive proper notice of a motion which could have serious consequences for them.

### D. Administrative Status of the Deficiency Claim

■ In essence, Mulligan contends that the undersecured portion of his secured claim, namely the $413,332.33, is entitled to administrative expense status under either Code § 364(a), (b) or (c)(1). This appears to be a transparent attempt to "fall back" to the status of an unsecured administrative expense creditor. The express terms of Code § 364, as well as the prevailing case law in this jurisdiction, belie this argument.

Under Code § 364(c)(2), the court may authorize a debtor to incur secured credit out of the ordinary course of its business only if the debtor has been "unable to obtain unsecured credit allowable under section 503(b)(1) … as an administrative expense". This provision is part of an hierarchial credit authorization structure contemplated by Code § 364. As Bankruptcy Judge Schwartzberg aptly explained:

Bankruptcy Code § 364 was structured with an escalating series of inducements which a debtor in possession may offer to attract credit in the post-petition period. First, creditors who are willing to extend unsecured credit in the ordinary course of business are offered the inducement of an administrative priority

under 11 U.S.C. § 364(a). If a creditor is willing to extend unsecured credit, but not in the ordinary course of business, such credit may be authorized by the court, after notice and a hearing, pursuant to 11 U.S.C. § 364(b). If creditors are unwilling to extend unsecured credit to a debtor in possession, further inducements are offered, with court approval after notice and a hearing, including super priority administrative expenses under 11 U.S.C. § 364(c)(1); secured liens on unencumbered property pursuant to 11 U.S.C. § 364(c)(2); junior liens on encumbered property in accordance with 11 U.S.C. § 364(c)(3), or senior or equal liens pursuant to 11 U.S.C. § 364(d). The mere fact that credit was extended in a post-petition period does not mean that an administrative priority will automatically attach, notwithstanding the origin of the credit.

*Sapir v. CPQ Colorchrome Corp. (In re Photo Promotion Associates, Inc.)*, 87 B.R. 835, 839 (Bankr.S.D.N.Y.1988), *aff'd*, No. 88 Civ. 7015 (S.D.N.Y. Dec. 2, 1988), *aff'd*, 881 F.2d 6 (2d Cir.1989).

In the affidavit annexed to debtor's application for the Order to Show Cause to secure credit from Mulligan, the debtor stated that he was unable to obtain financing on an unsecured basis, even after "Herculean efforts". Creditor's Exhibit C. As a result, Mulligan's offer to extend credit on a secured basis became the only financing prospect available to the debtor. The conclusion that must be drawn is that Mulligan was unwilling to lend on an unsecured basis. Having refused to lend on an unsecured basis, he cannot now fall back to either Code § 364(a) or (b). Rather, he is relegated to the protection he sought and was granted under Code § 364(c).

Although the subdivisions contained in Code § 364(c) appear in the alternative, creditors often seek the "super-priority" of Code § 364(c)(1) in conjunction with the lien protection of Code § 364(c)(2). *See, e.g.,* 3

A. Herzog & L. King, *Collier Bankruptcy Practice Guide* ¶ 44.03[3] ("While the disjunctive is used in the drafting of section 364(c), it seems clear that any one or a combination of the alternatives set forth therein may be used."); M. Gerber, *Business Reorganizations* 643 (1986) ("These options are not exclusive and may be employed individually or in tandem."). Mulligan, having obtained protection solely pursuant to Code § 364(c)(2), cannot now assert that he obtained by operation of law an unsecured administrative expense priority under Code § 364(c)(1). The subdivisions of Code § 364(c) are in the alternative; the authorization of credit under one does not imply authorization under another absent application for such additional relief.[2] Therefore, by operation of Code § 348(d), the deficiency portion of Claim Number 96 becomes a pre-petition general unsecured claim without priority.

### III. CONCLUSIONS OF LAW

1. The Court has jurisdiction pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding as provided by 28 U.S.C. § 157(b)(2)(B).

2. Pursuant to B.R. 3007, the debtor has standing to object to Claim Number 96 filed by Mulligan.

3. Mulligan is precluded from attempting to set aside the April 6, 1987 Order on the ground of mistake, as the attempt is untimely pursuant to Fed.R.Civ.P. 60(b).

4. The April 6, 1987 Order is clear on its face in that it authorized the debtor to obtain credit from Mulligan solely under Code § 364(c)(2).

5. The $413,332.33 deficiency portion of Claim Number 96 is not entitled to an unsecured administrative expense priority under either Code § 364(a), (b) or (c)(1).

6. Accordingly, debtor's motion seeking to reclassify Claim Number 96 as a general

---

**2.** The issue as to whether Mulligan may be able to establish a claim for administrative expense priority under Code § 503(b) has not been presented. *See, e.g., Sapir v. CPQ Colorchrome Corp. (In re Photo Promotion Associates, Inc.)*, 87

B.R. 835 (Bankr.S.D.N.Y.1988), *aff'd*, No. 88 Civ. 7015 (S.D.N.Y. Dec. 2, 1988), *aff'd*, 881 F.2d 6 (2d Cir.1989); *Matter of Patch Graphics*, 58 B.R. 743 (Bankr.W.D.Wis.1986).

unsecured claim pursuant to Code § 348(d) is granted.